**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**LEO PACHECO,**

     **Plaintiff,**

**v.**                                                   **No. 20-cv-0146 SMV/JHR**

**THOMAS ALLEN, MOLTZ CONSTRUCTORS INC.,**
**and ZURICH AMERICAN INSURANCE COMPANY,**

     **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Remand [Doc. 13], filed on March 23, 2020. Defendants Allen and Moltz Constructors Inc. ("Moltz") responded on April 13, 2020. [Doc. 25]. Defendant Zurich American Insurance Company ("Zurich") responded on April 14, 2020. [Doc. 26]. Plaintiff replied on April 29, 2020.[1] [Doc. 31]. The parties consented to have the undersigned conduct dispositive proceedings in this matter. [Doc. 16]. The Court has considered the briefing, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, the Court finds that the Motion is well taken and shall be GRANTED.

## BACKGROUND

On or about October 10, 2017, Plaintiff's car collided with a car driven by Allen. [Doc. 1-2] at 1–2, 4–5. Allen was employed by Moltz. [Doc. 1-2] at 1. Plaintiff alleges that Allen

---

[1] It appears that Plaintiff filed his Reply after the 14-day deadline to file replies. *See* D.N.M.LR-Civ. 7.4(a). Because Defendants do not challenge the timeliness of the Reply, the Court will consider it.

was acting within the scope of his employment at the time of the accident.  *Id.* at 1.  Plaintiff claims

to have suffered injuries as a result of the crash.  *Id.* at 2.

Prior to filing suit, the parties discussed settling the case.  Suggesting that the case could

be worth more than $200,000, [Doc. 31-2] at 1, Plaintiff offered to settle for $115,000, [Doc. 13]

at 6.  The case did not settle.  On January 13, 2020, Plaintiff sued Defendants in New Mexico state

court for various state-law claims related to the crash.  *Id.*  He claims that Allen's negligent driving

caused the crash.  *Id.* at 2–3.  He alleges that Moltz negligently hired, trained, and supervised

Allen.  *Id.* at 4–5.  Finally, Plaintiff claims that Allen's insurer, Zurich, (1) is liable for payment

of damages resulting from the crash, and (2) violated the New Mexico Unfair Claims Practices

Act by failing to attempt to settle the case in good faith.  *Id.* at 3–4.

Zurich removed the case to federal court on February 20, 2020, on the basis of diversity

jurisdiction.  [Doc. 1] at 2–3.  Zurich asserts that there is complete diversity because it is a citizen

of New York and Illinois, Plaintiff is a citizen of New Mexico, Allen is a citizen of Florida, and

Moltz is a citizen of Wyoming and Colorado.  *See id.*  Zurich also asserts that the amount in

controversy exceeds $75,000.  *Id.*

Plaintiff filed his Motion to Remand on March 23, 2020.  [Doc. 13].  Allen filed his Notice

of Removal on March 30, 2020, asserting that diversity jurisdiction exists for the same reasons

identified by Zurich.  *See* [Doc. 17] at 2–3.

## LEGAL STANDARD

"[The] party invoking diversity jurisdiction bears the burden of proving its existence by a

preponderance of the evidence."  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

Because federal courts are courts of limited jurisdiction, "[r]emoval statutes are to be strictly

construed, and all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (citation omitted).

## ANALYSIS

Plaintiff argues that the Court should remand the case because (1) Zurich failed to comply with the procedural requirements of removal, (2) the amount in controversy does not exceed $75,000, and (3) complete diversity does not exist because Plaintiff and Allen are domiciled in New Mexico. [Doc. 13] at 4–7. Because the Court finds that Defendants have failed to show that Plaintiff and Allen were citizens of different states at the time Plaintiff filed the Complaint, it will grant the Motion and will not reach Plaintiff's remaining arguments.

Diversity jurisdiction exists "only if no plaintiff and no defendant are citizens of the same state." *Middleton*, 749 F.3d at 1200; *see* 28 U.S.C. § 1332(a) (2018). "[A] person is a citizen of a state if the person is domiciled in that state." *Middleton*, 749 F.3d at 1200. "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* "The party invoking diversity jurisdiction might satisfy [its] burden by leaning on a rebuttable presumption that its domicile, once established, remains the same." *Id.* "But that presumption is a rebuttable one, and the party seeking to rebut it bears only a burden of production—not persuasion." *Id.* "And if a party successfully rebuts the presumption, it disappears from the case, leaving [the Court] at square one: The [party invoking jurisdiction] bears the burden of proving diversity by a preponderance of the evidence." *Id.*

"[W]hen it comes to determining a person's domicile for diversity-jurisdiction purposes, a district court should consider the totality of the circumstances." *Id.* at 1200–01. Courts consider numerous factors, including:

> the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

*Id.* at 1201 (quoting 13E Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3612 (3d ed. 2009)).  No one factor controls, and "the inquiry must be done on a case-by-case basis."  14C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3612 (4th ed. 2020).  "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts."  *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

The Court must first determine when Defendants must show that complete diversity existed.  Courts often articulate different standards for when complete diversity must exist in removed cases: at the time of the filing of the complaint, the time of removal, or both.[2]  *See Elling v. Mesa Biotech, Inc.*, No. 19-cv-0547 LF/SCY, 2019 WL 5168616, at *3 n.4 (D.N.M. Oct. 15, 2019).  The outcome in this case depends on which standard the Court selects because Defendants present evidence of Allen's alleged Florida domicile that postdate the filing of the Complaint in state court but predate the Notice of Removal.  *See, e.g.*, [Doc. 25-1] at 3–5.

The Tenth Circuit has not expressly addressed this question.  It has, however, stated (without analysis) that a court must determine whether the parties were diverse in a removed case by looking at the record when the plaintiff filed the complaint.  *See Siloam Springs Hotel, L.L.C.*

---

[2] Defendants themselves argue that "[d]iversity of citizenship for federal diversity jurisdiction is 'assessed at the time the action is filed.'"  [Doc. 25] at 7; [Doc. 26] at 13 (quoting *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991)).

*v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015) (stating that in a removed case, "it is clear the relevant time period for determining the existence of complete diversity is the time of the filing of the complaint" in state court).  Some judges within the District of New Mexico have noted that the issue remains undecided, *see Elling*, 2019 WL 5168616, at *3 n.4; *Sanchez v. Cano-Marquez*, No. 14-cv-0926 MV/GBW, 2015 WL 13662863, at *3 n.4 (D.N.M. Apr. 20, 2015), while another District of New Mexico judge has stated, "It is well established that when diversity of citizenship is the basis for removal jurisdiction, it must exist both at the time the original action is filed in state court and at the time removal is sought."  *Bank of Am., N.A. v. Lebreton*, No. 14-cv-0319, JB/KBM, 2015 WL 2226266, at *30 n.20 (D.N.M. Apr. 20, 2015) (quoting *Farm Bureau Mut. Ins. Co. v. Eighmy*, 849 F. Supp. 40, 42 (D. Kan. 1994)).  Other districts within the Tenth Circuit have found that when diversity jurisdiction is the basis for the notice of removal, diversity must exist both when the plaintiff filed the action in state court and at the time of removal.  *See Sidwell v. McCoy*, No. 14-cv-01142-PAB-KMT, 2014 WL 4265921, at *1 (D. Colo. Aug. 29, 2014); *Turley v. Stilwell*, No. 11-CV-0030-CVE-FHM, 2011 WL 1104543, at *3 (N.D. Okla. Mar. 22, 2011); *Bank IV Salina, N.A. v. Aetna Cas. & Sur. Co.*, 783 F. Supp. 1315, 1316 (D. Kan. 1992).  It appears that many districts within the Tenth Circuit require, at least, that diversity exist at the time of the filing of the complaint, in addition to the requirement that it exist at the time of removal.

Outside of the Tenth Circuit, seven circuit courts of appeals—a majority—require that for removed cases, diversity exist both at the time of the filing of the complaint and at the time of removal.  *See Chapman v. Crane Co.*, 694 F. App'x 825, 828 (2d Cir. 2017); *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014); *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d

5

1129, 1131 (9th Cir. 2002); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999); *Coury*, 85 F.3d at 249 (Fifth Circuit); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989); *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 776–77 (7th Cir. 1986).[3]  The Supreme Court has held that a case "was not removable from the state court, unless . . . at the commencement of the action, as well as when the removal was asked, [the defendants] were citizens of some other state than the one in which the plaintiff was, at those respective dates, a citizen."  *Stevens v. Nichols*, 130 U.S. 230, 231 (1889).  Therefore, the weight of authority supports holding that in a removed case, complete diversity must exist both at the time of the filing of the complaint and at removal.

This weight of authority tracks both the statutory requirements for removal and logic. "Under 28 U.S.C. § 1441(a), a defendant may remove the action to federal court if the federal court has original jurisdiction over the action.  In other words, removal is reserved for those cases 'that originally could have been filed in federal court.'"  *Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  Courts must analyze the record at the time the complaint was filed to determine if it "could have been filed in federal court." *Id.* (quoting *Caterpillar Inc.*, 482 U.S. at 392).  Moreover, requiring diversity to be present upon filing of the complaint and removal prohibits defendants from manipulating their citizenship after being sued in order to obtain federal jurisdiction.  *See* Wright & Miller, *supra*, § 3723 ("The

---

[3] It does not appear that the D.C. Circuit or the Federal Circuit have reached this issue, and some districts within the Third Circuit have required diversity to exist both at the time of the filing of the complaint and at removal.  *See In re Paulsboro Derailment Cases*, No. 13-208 (RBK/KMW), 2014 WL 1214037, at *3 (D.N.J. Mar. 24, 2014) ("In a case that is removed from state court, complete diversity must exist at both the time of commencement of the action and the time of removal."); *Santarelli v. Intelligrated Prods., LLC*, No. 3:11-CV-1812, 2012 WL 279644, at *2 (M.D. Pa. Jan. 31, 2012) (same).

purpose of requiring diversity to exist at both times [filing of complaint and removal] . . . is to prevent a non-diverse defendant from acquiring a new domicile after commencement of the state-court suit and then removing on the basis of the newly created diversity of citizenship.").

Therefore, based on the requirements of § 1441, the above cases, and the benefits of the following rule, the Court holds that for diversity jurisdiction to exist in this[4] removed case, the proponent of federal jurisdiction must establish diversity both at the time of filing of the complaint and at the time of removal.

Although it is a close call, the Court concludes that Defendants have failed to establish complete diversity at the time Plaintiff filed the Complaint. The parties do not dispute that Plaintiff was a citizen of New Mexico when he filed his Complaint. Because Defendants have not shown that Allen was not also a citizen of New Mexico, complete diversity did not exist.

The Court presumes that a person's domicile, once established, remains the same. *Middleton*, 749 F.3d at 1200. Allen avers that he was born in Florida and has continuously resided there. [Doc. 25-1] at 7. This evidence creates the presumption that he was domiciled in Florida when the Complaint was filed. *See Middleton*, 749 F.3d at 1200. Yet, Plaintiff rebuts this presumption by producing sufficient evidence suggesting that this domicile has changed. *See id.* This evidence includes: Allen frequently works in New Mexico; a DWI citation lists his address in Gallup, New Mexico; and as of January 9, 2020, Allen had a New Mexico driver's license. *See*

---

[4] Certain exceptions to this rule exist but do not apply here. For example, if the *plaintiff* takes actions after the filing of the complaint that cause complete diversity to exist, the Tenth Circuit may allow the defendant to remove the case. *See DeBry v. Transamerica Corp.*, 601 F.2d 480, 487 (10th Cir. 1979) ("[W]here the plaintiff, by [v]oluntary action, changes the situation, such as by dismissing a non-diverse defendant[,] to bring about a diversity situation, the [removal] statute does apply.").

[Docs. 13-7, 13-8, 25-1].  The presumption therefore "disappears from the case," and Defendants must prove diversity by a preponderance of the evidence.  *Middleton*, 749 F.3d at 1200.

After weighing each of the applicable factors from *Middleton*, the Court finds that Defendants have failed to show that Allen was not a citizen of New Mexico at the time Plaintiff filed the Complaint.  First, multiple pieces of objective evidence reflect a New Mexico address associated with Allen at the time Plaintiff filed the Complaint.  On January 9, 2020, unrelated to the instant case, the City of Los Alamos, New Mexico, cited Allen for driving while intoxicated.  [Doc. 13-7] at 2.  His criminal citation reflects a Gallup, New Mexico, address.  *Id.* at 2.  The criminal complaint against Allen for driving under the influence also reflects an address in Gallup as of January 9, 2020—just days before Plaintiff filed his Complaint on January 13, 2020.  *See* [Doc. 13-7] at 1; [Doc. 1-2].  Finally, a notice of revocation of driving privileges states that Allen lived in Gallup as of January 9, 2020.  *See* [Doc. 13-7] at 3.  Though, as Defendants argue, Allen did not sign these documents, [Doc. 26] at 14, because these documents show that Allen was living or could be reached at an address in New Mexico, they weigh in favor of finding that he was a New Mexico citizen.[5]

Second, and relatedly, these documents reflect that Allen had a New Mexico driver's license as of January 9, 2020.  *See* [Doc. 13-7] at 1–3.  This driver's license listed the same Gallup address as above.  *See id.*  Allen's New Mexico driver's license weighs in favor of finding him to be a New Mexico citizen.

---

[5] Additionally, though the accident report for the incident at issue in this case reflects that Allen had a Florida address, because the police generated this report in 2017, the Court finds that it has no temporal relationship to Allen's domicile at the time Plaintiff filed the Complaint on January 13, 2020.  *See* [Doc. 13-1] at 1.

Allen contests that he resided in New Mexico at the time Plaintiff filed the Complaint. Allen averred that, as of April 10, 2020, he was "resid[ing]" in Crawfordville, Florida. [Doc. 25-1] at 1. Simply because he resided in Florida on April 10, 2020, does not mean that he had a Florida domicile on January 13, 2020. He also averred that he has continuously resided in Florida since his birth. [Doc. 25-1] at 1. Allen produces a Florida driver's license showing a Crawfordville address. *Id.* at 3. Yet, his Florida license was issued on February 3, 2020. *See id.* A driver's license obtained after January 13, 2020, does not show that Allen had a Florida domicile at the time Plaintiff filed the Complaint.[6] Though the Court assigns some weight to Allen's testimony, the objective evidence tells a different story.

Third, Allen's work history slightly weighs in favor of finding that he was domiciled in New Mexico at the time Plaintiff filed the Complaint. Allen admits that he "frequently works in the four corners area of the United States [including New Mexico]" as "a private contractor." [Doc. 25-1]. Allen argues that in his work as an independent contractor, he "travels and stays in different states." [Doc. 25] at 8. The Court understands that contractors may work in a state in which they do not live. Yet, Allen identifies no evidence showing that he performs any work in Florida, and he admits that he often works in New Mexico. Allen does not aver that he only temporarily worked in New Mexico. His employment history weighs against finding that he is a Florida domiciliary.

Fourth, that Allen had a truck registered in Florida at the time the Complaint was filed weighs in favor of finding him to be a Florida domiciliary. Allen's January 9, 2020 DWI citation

---

[6] Though Allen argues in his brief that he only obtained a New Mexico license to avoid "disrupting his work obligations" in the state, [Doc. 25] at 8, he points to no evidence corroborating this argument.

shows that his 2010 Dodge pickup truck was registered in Florida. *See* [Doc. 13-7] at 2. This evidence supports a finding that he was domiciled in Florida. Allen also argues that his motorcycle is registered in Florida. *See* [Doc. 25] at 8. He produces his motorcycle insurance card. [Doc. 25-1] at 5. This insurance card, however, has an effective date of February 19, 2020—after Plaintiff filed the Complaint. Similarly, though Allen produces a receipt from the Florida Department of Highway Safety and Motor Vehicles, apparently showing that he registered vehicles in Florida, the date of registration does not appear on this receipt, preventing the Court from knowing if this evidence existed at the time the Complaint was filed. *See* [Doc. 25-1] at 6–7. Nonetheless, that Allen had a truck registered in Florida on January 9, 2020, weighs in favor of finding him to be a Florida domiciliary.[7]

Fifth, Allen pays taxes in Florida. [Doc. 25-1] at 2. Plaintiff argues that Allen pays taxes in New Mexico because, in 2014, the New Mexico Taxation and Revenue Department assessed a tax lien against him. *See* [Doc. 13-4] at 1. The most that this evidence establishes, however, is that Allen once owed taxes in New Mexico in 2014—long before Plaintiff filed the Complaint. Allen's payment of taxes therefore weighs in favor of finding him to be a citizen of Florida.

Finally, that Allen has family in New Mexico weighs slightly in favor of finding him to be a citizen of New Mexico. Plaintiff's process server, Carlos Loomis, avers that he drove to an address in New Mexico to serve Allen. *See* [Doc. 31-1] at 1. When he arrived, he spoke with Allen's adult daughter, Lauren Allen. *Id.* He observed that "Lauren had two male toddlers." *Id.*

---

[7] Plaintiff asserts in the body of his Motion that a "public records search" showed that three of Allen's vehicles—including his 2010 Dodge truck—are registered in New Mexico. [Doc. 13] at 3. Yet, because he produces no evidence showing the results of this public records search, the Court declines to consider Plaintiff's unsubstantiated assertion that Allen's vehicles are registered in New Mexico.

Though family members often live in different states, that Allen has a daughter—and possibly two grandsons—in New Mexico suggests that he is domiciled there. *See Henry v. Ehly*, No. 00-cv-0565 JP/KBM, 2001 WL 37125288, at *1 (D.N.M. May 29, 2001).

Weighing all of the above evidence, the Court finds that Defendants have not shown that Allen was a citizen of a state different than Plaintiff at the time Plaintiff filed the Complaint. The issue is close; multiple factors support a finding that diversity does or does not exist. Yet, numerous documents show Allen to reside at a New Mexico address, and Allen produces no objective, temporally relevant evidence showing addresses in Florida. Evidence commonly suggesting that a person lives, and intends to stay, in a location—such as possessing a driver's license, working, and having family in the state—suggest that he is a New Mexico domiciliary. This objective evidence outweighs Allen's unsubstantiated statements that he has continuously resided in Florida, in addition to his payment of taxes and registration of one vehicle in Florida.[8] Though close, the Court must resolve doubts against removal. *See Fajen*, 683 F.2d at 333. It finds that Defendants have not shown by a preponderance of the evidence that Allen was not a citizen of New Mexico at the time Plaintiff filed the Complaint. As Defendants have not shown that Allen and Plaintiff had diverse citizenships at that time, the Court will remand the case.

Plaintiff requests his attorney fees and costs. [Doc. 13] at 8. He also requests sanctions against Zurich for failing to establish a good-faith basis for removal. *Id.* "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred

---

[8] Allen fails to aver that, as of the date Plaintiff filed the Complaint, he voted in Florida, that he was a member of a church or other association in Florida, that he had Florida bank accounts, or that any other factor identified in *Middleton* supported a finding that he was a Florida domiciliary.

as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447 only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Here, Defendants had an objectively reasonable basis for seeking removal based on diversity jurisdiction. As noted, Allen has various ties to Florida, and Plaintiff offered to settle the case for amounts near the jurisdictional threshold. *See* [Doc. 31-2]; [Doc. 13] at 6. The Court declines to award fees, costs, or sanctions.

## CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Remand [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney fees, costs, and sanctions is **DENIED**.

**IT IS SO ORDERED.**

_____

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**